UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JOE B. UPCHURCH AND
MARY BETH UPCHURCH                                                                                    PLAINTIFFS

V.                                                                           CIVIL ACTION NO. 3:11CV252 DPJ-FKB

CORPORAL DAVID HARCHARIK, ET AL.                                                    DEFENDANTS

ORDER

This § 1983 action alleging excessive force and false arrest by law-enforcement officers is before the Court on Defendants' motion for summary judgment [42] in accordance with Federal Rule of Civil Procedure 56. Plaintiffs have responded in opposition [45]. The Court, having considered the submissions of the parties and the relevant authorities, finds Defendants' motion should be granted in part and denied in part.

I.      Facts and Procedural History

This case involves the traffic stop of a Jeep driven by Kenneth McKinley and owned by Plaintiff Joe Upchurch—a passenger in the vehicle. Stated succinctly, Upchurch would not exit his vehicle when instructed to do so and a disagreement developed between Upchurch and Mississippi Highway Patrol Troopers David Harcharik, Julius Hutson, and Barry Stingley. Following the stop, the officers tased Upchurch more than once, pulled him from the vehicle, laid him on the ground, placed a knee in his back, and handcuffed him. The officers charged Upchurch with failure to comply with an order, public drunkenness, and resisting arrest. All charges were subsequently terminated in Upchurch's favor.

As a result of the encounter, Upchurch sustained bruises, abrasions, and, according to him, fractured vertebrae requiring back surgery. Upchurch and his wife filed this suit against the

arresting officers, in their individual and official capacities, alleging excessive force in executing a false arrest.  They also sued Master Sergeant Cleotho Lindsey who conducted the use-of-force investigation after the arrest, but Plaintiffs appear to have abandoned any claims against Lindsey. The matter is before the Court on Defendants' motion for summary judgment which relies on the Mississippi Tort Claims Act, Eleventh Amendment immunity, and qualified immunity.  The Court has jurisdiction and is prepared to rule.

II.     Summary Judgment Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam).  When such contradictory facts exist, the court may "not make

credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993) (per curiam).

III.     Analysis

The Complaint avers state-tort and federal-statutory claims against Defendants in their individual and official capacities. Defendants seek dismissal, and Plaintiffs essentially concede all but their "claims under federal law made in [the Troopers'] individual capacities." Pls.' Mem. [46] at 6. Plaintiffs ignore all other arguments and have abandoned their remaining claims. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff's] failure to pursue this claim beyond [the] complaint constituted abandonment." (citation omited)). The Court therefore finds that the Eleventh Amendment bars all official capacity claims. All individual capacity state-law claims are either untimely or barred by the Mississippi Tort Claims Act. Miss. Code Ann. § 11-46-7(2); *see Jones v. B.L. Dev. Corp.*, 940 So. 2d 961, 965, 968 (Miss. Ct. App. 2006) (noting one-year statute of limitations for claims of intentional infliction of emotional distress, assault and battery, and false arrest). That leaves Plaintiffs' claims under 42 U.S.C. §§ 1983 and 1985(3) against Defendants in their individual capacities based on alleged false arrest and excessive force. As to those claims, the parties focus on whether Defendants are entitled to qualified immunity.

  A. Qualified Immunity Standard

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (citations omitted). When a defendant raises qualified immunity, the burden is on the plaintiff to "demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

To determine if an individual is entitled to qualified immunity, the court applies a two-step analysis. "First, [the court] ask[s] whether, considered in the light most favorable to the plaintiff, the plaintiff has alleged facts that, if proven, would establish that the official violated the plaintiff's constitutional rights." *Senu-Oke v. Jackson State Univ.*, 283 F. App'x 236, 238 (5th Cir. 2008) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If the defendant's conduct did not violate [the] plaintiff's constitutional rights under the first prong, . . . he is entitled to qualified immunity." *Blackwell v. Laque*, No. 07-30184, 2008 WL 1848119, at *2 (5th Cir. Apr. 24, 2008). The second prong requires the court to consider

> whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions.

*Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007) (citations omitted). "It is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Katz*, 533 U.S. at 201). Thus, "[t]he contours of the right must be sufficiently clear that a reasonable

4

official would understand that what he is doing violates that right.  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 199 (citations omitted).  District courts are free to address the second prong first.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

      B.      The Claims

Defendants' motion focuses on two claims:  false arrest and excessive force.  The parties record evidence related to these claims is in some instances consistent.  But material differences exist, and it is important to reemphasize that the Court must view the facts in the light most favorable to Upchurch.  *See Reeves*, 530 U.S. at 150 (holding that the court may "not make credibility determinations or weigh the evidence"); *Little*, 37 F.3d at 1075 (observing that facts must be viewed in the light most favorable to the non-movant).  When so viewed, the Court finds that the false-arrest claim fails but the excessive-force claim survives.

          1.      False Arrest

In a false- or unlawful-arrest claim, "[an officer] is entitled to qualified immunity if a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which [he] was aware, there was a fair probability that [the arrestee] had committed or was committing an offense." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 656 (5th Cir. 2004) (citations omitted).  "'Even law enforcement officials who reasonably but *mistakenly* conclude that probable cause is present are entitled to immunity.'" *Id.* (emphasis in original (citation omitted) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)); *see also Anderson v. Creighton*, 483 U.S. 635, 641 (recognizing that "it is inevitable that law enforcement

5

officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable"). "In sum, [Upchurch] 'must clear a significant hurdle to defeat [Defendants'] qualified immunity.'" *Haggerty*, 391 F.3d at 656 (quoting *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001)). "[T]here must not even arguably be probable cause for the . . . arrest for immunity to be lost." *Brown*, 243 F.3d at 190 (internal quotation and citations omitted). These inquiries are fact specific, calling for a more detailed examination of the record evidence.

Here, Corporal David Harcharik was conducting a license checkpoint when he observed Upchurch's Jeep making a U-turn before reaching the road block. After stopping the Jeep and discovering that the driver, McKinley, was driving with a suspended license, Harcharik approached Upchurch in the passenger seat and "detected the presence of an alcoholic beverage emitting from his breath." Pls.' Resp. [45] Ex. 3, Harcharik Dep. at 24. Harcharik told Upchurch to call for a ride, and Upchurch contacted his wife. *Id*. at 27. Harcharik then instructed Upchurch to exit the vehicle and advised him the vehicle would be towed. *Id*. at 28–29. Upchurch refused, an altercation followed, and Upchurch was arrested for failing to follow Harcharik's orders, among other misdemeanor charges.

According to Upchurch, he had the right under Mississippi law to resist Harcharik's order because the order was unlawful. But as Defendants note, McKinley's attempt to evade the checkpoint by executing a U-turn constituted reasonable suspicion warranting a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1 (1968). "The Mississippi Supreme Court has held that where a motorist evades a police roadblock, 'that police may stop them and check the validity of their

license[,] tag, and inspection sticker'" and that such stops are "clearly within the coverage of the Fourth Amendment." *Boyd v. State*, 751 So. 2d 1050, 1052–53 (Miss. Ct. App. 1998) (quoting *Boches v. State*, 506 So. 2d 254, 264 (Miss. 1987)).  With a *Terry* stop, "law enforcement officers may briefly detain pedestrians and motorists in public, even without probable cause to arrest them, so long as the officers have reasonable suspicion to believe that criminal activity is afoot." *United States v. Ibarra-Sanchez*, 199 F.3d 753, 758 (5th Cir. 1999) (citation omitted). And "[i]t is settled that officers conducting a lawful *Terry* stop of a vehicle may order both the driver and the passengers to exit the vehicle pending completion of the stop." *Id.* at 761.  Finally, failure to follow the lawful orders of a law-enforcement officer violates Mississippi Code Annotated section 97-35-7.[1]

Following the U-turn, Harcharik had reasonable suspicion to stop the vehicle and authority to arrest McKinley and order Upchurch to exit the vehicle.  *Cf. Qualls v. State*, 947 So. 2d 365, 372 (Miss. Ct. App. 2007) (noting that officer could charge vehicle occupants with failure to comply with the lawful commands of a police officer for failing to exit a suspicious

---

[1]That section states in relevant part:

(1) Whoever, with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer, having the authority to then and there arrest *any* person for a violation of the law, to:
   . . .

   (i) Act or do or refrain from acting or doing as ordered, requested or commanded by said officer to avoid any breach of the peace at or near the place of issuance of such order . . . .

Miss. Code Ann. § 97-35-7.

vehicle when ordered to do so).  The officer also possessed authority to tow the Jeep, and there existed an obvious need to remove Upchurch before that occurred.  Upchurch was required to comply with the lawful order to exit, and probable cause therefore existed to believe Upchurch violated section 97-35-7 by failing to comply.  *Id.*[2]

Upchurch has offered no analogous authority for finding a constitutional violation in light of these facts.  And the Court finds that he likewise fails to show that "defendant[s'] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question."  *Freeman*, 483 F.3d at 411 (citations omitted).  Defendants are thus entitled to qualified immunity on Plaintiffs' false-arrest claim.[3]

      2.     Excessive Force

To establish a claim for use of excessive force under the Fourth Amendment, Upchurch must prove he "(1) suffered some injury which (2) resulted from force that was clearly excessive

---

[2] Upchurch argues that if an officer "did not then and there have authority to arrest someone for violation of the law (i.e. he had not observed unlawful conduct), the officer's orders were not lawful." Pls.' Mem. [46] at 12.  Upchurch relies on *Woods v. Carroll County*, where officers ordered individuals "peaceably congregating outside" to go inside a home.  No. 4:07cv94, 2009 WL 1619955, at *4 (N.D. Miss. June 9, 2009).  First, *Woods* did not involve a *Terry* stop.  Second, even assuming Plaintiffs are correct that the officer must have the authority to actually arrest someone for violating the law before section 97-35-7 applies—which may not be a correct reading of the statute—Harcharik arrested McKinley for driving with a suspended license.  He therefore had authority to arrest "any person" as stated in the statute, making his orders to Upchurch lawful.  *Cf. Bovan v. State*, 706 So. 2d 254, 256–57 (Miss. Ct. App. 1997) (Southwick, J.) (affirming conviction under section 97-35-7(1) when defendant refused to follow officers' orders given while attempting to apprehend a suspect).

[3] Upchurch was charged with two other offenses—public drunkenness and resisting arrest.  The Court need not analyze whether probable cause existed for these charges.  *See Winston v. City of Shreveport*, 390 F. App'x 379, 384 (5th Cir. 2010) ("The district court correctly found that if Officer Willis had probable cause to arrest Winston for any charge, it did not need to examine whether probable cause existed for the additional charges.").

to the need for force; (3) the excessiveness of which was objectively unreasonable." *Heitschmidt v. City of Houston*, 161 F.3d 834, 839 (5th Cir. 1998) (citing *Ikerd v. Blair*, 101 F.3d 430, 433–34 (5th Cir. 1996)). Excessive force claims are necessarily fact-intensive; whether the force used is excessive or unreasonable depends on "the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (observing that this "area is one in which the result depends very much on the facts of each case"). Important factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citation omitted). The determination of "objective reasonableness" is a question of law. *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (citing *White v. Balderama*, 153 F.3d 237, 241 (5th Cir. 1998)). But disputes of material fact will prevent a court from determining the objective reasonableness of an officer's conduct, thereby precluding summary judgment. *Gutierrez v. City of San Antonio*, 139 F.3d 441, 451–52 (5th Cir. 1998).

Determining whether the force used was excessive requires one last look at the facts and closer review of the altercation between Upchurch and Defendants. For starters, the crime at issue was a misdemeanor and not severe. But as noted above, Upchurch refused Harcharik's initial order to exit the vehicle. The situation then went downhill quickly. Harcharik testified that he warned Upchurch that if he did not exit the vehicle, he would be arrested for failure to comply with a lawful order. Harcharik Dep. at 30. Upchurch remained in the vehicle. According to Upchurch, Harcharik muttered profanities; jerked the keys out of the ignition; tried to punch him; and grabbed him by his neck, shoulder, arms, and shirt (which ripped), all in an

effort to pull Upchurch from the Jeep. Upchurch Dep. at 14, 17–19. Upchurch explained that he resisted being pulled out of the vehicle for fear that Harcharik would beat him. *Id*. at 21 (testifying that Harcharik stated at some point, "I'll beat your ass"). Harcharik then used his Taser on Upchurch, but it may not have worked. *Compare* Harcharik Dep. at 38 (stating it had no effect), *with* Upchurch Dep. at 23 (stating "[h]e lit me up and jolted me"). Still, Upchurch remained in the vehicle, prompting Harcharik to call Troopers Stingley and Hutson for assistance.

Harcharik and Stingley continued the unsuccessful effort to pull Upchurch from the Jeep. Harcharik testified that no fists were thrown by Upchurch and at no time was an officer struck. Harcharik Dep. at 49. Upchurch recounted that he heard one Trooper state, "Tase the [expletive]." Upchurch Dep. at 26. Defendant Stingley apparently complied, tasing Upchurch, but again the parties dispute whether the Taser was effective. *Compare* Harcharik Dep. at 45 (stating it had no effect), *with* Upchurch Dep. at 30 ("It was one of the most excruciating pains that I have ever had in my life."), *and* Stingley Dep. at 30 (stating Upchurch reacted).

According to Harcharik, Upchurch remained combative, Harcharik Dep. at 48, but Upchurch tells a different story, testifying that the Taser caused great pain and that he told the officers, "I'm coming out." Upchurch Dep. at 30. Upchurch contends that the Troopers then took him from the vehicle, "threw [him] in an ant bed . . . and let [him] lay in there" getting bit, stepped on his back, and then held him down by placing a knee in his back while securing handcuffs. *Id*. at 31–32. *Id.* Finally, the parties dispute how much pressure Harcharik exerted on Upchurch's back. Upchurch claims that the episode resulted in at least one fracture of his T-

12 vertebrae.  Upchurch Dep. at 31, 41–43.  Defendants discount the injury, claiming that Upchurch had preexisting back problems—which merely creates a question of fact.

These facts, when viewed in a light most favorable to Upchurch, are analogous to those addressed in *Deville v. Marcantel*, where the Fifth Circuit reversed summary judgment as to an excessive-force claim arising from a traffic stop for speeding.  567 F.3d 156, 169 (5th Cir. 2009) (also denying qualified immunity).  There, the plaintiff refused to exit the vehicle, and the officers broke the glass of the driver's side window, grabbed the plaintiff, pulled her out of the vehicle, threw her against the vehicle, and handcuffed her.  *Id.* at 162.  The officers and the plaintiff presented different accounts of the exchange, particularly with regard to the plaintiff's demeanor and the amount of force used.  *Id.* at 163.

Here, the Court is similarly faced with differing accounts.  For example, the officers and Upchurch have dissimilar recollections as to the efforts to remove Upchurch before the Taser was used and the effect of the Taser.  More significantly, they dispute whether Upchurch continued to resist (or acquiesced) after the final tasing.  This dispute goes to the heart of the question whether Upchurch "pose[d] an immediate threat to the safety of the officers" or was "actively resisting arrest" when additional force was applied.  *Graham*, 490 U.S. at 396.  Finally, the parties dispute how much pressure was placed on Upchurch's back.

Because there exist disputed material facts regarding the need for restraint and the extent of force, the Court cannot say at the summary-judgment stage that the force used was objectively reasonable under the circumstances.  *See Staten v. Tatom*, 465 F. App'x 353, 359 (5th Cir. 2012) ("The parties present a number of disputes of material fact, including, objectively, whether or how much Plaintiff was resisting, the amount of force Defendant actually used at each stage of

the encounter, and whether that force was reasonable."); *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993) (holding that objective reasonableness could not be determined as a matter of law "without settling on a coherent view of what happened in the first place" (citation omitted); *Johnston v. City of Houston*, 14 F.3d 1056, 1061 (5th Cir. 1994) (affirming denial of summary judgment based on qualified immunity where plaintiff and officers offered "divergent versions" of the events).

Defendants' motion is therefore denied as to the excessive-force claim without prejudice to their right to raise qualified immunity as a defense at trial. *See Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005) (affirming denial of qualified immunity at summary judgment stage because of fact issues and noting that "the trier of fact might ultimately conclude that qualified immunity is warranted because reasonable officers could disagree about whether [the officer's conduct] was not unreasonable under the circumstances").

    C.    Loose Ends

Two issues cannot yet be resolved. First, Plaintiffs asserted conspiracy claims under 42 U.S.C. §§ 1983 and 1985(3) in Count Four of their Amended Complaint [11]. Defendants sought dismissal of the individual-capacity claims based exclusively on qualified immunity. Thus, Plaintiffs have not been put to their proof on Count Four, and because questions of fact preclude qualified immunity at this stage, the conspiracy claims survive. Second, the parties have not directly addressed the individual-capacity claims in Count Three of the Amended Complaint regarding due process under the Fifth and Fourteenth Amendments to the United States Constitution. Those claims will likewise proceed.

IV.	Conclusion

Based on the foregoing, the Court finds that the following claims should be dismissed: (1) all claims against Master Sergeant Cleotho Lindsey; (2) all claims against Defendants in their official capacities; (3) all state-law claims against Defendants in their individual capacities; and (4) the § 1983 false-arrest claim (Count Two) against Defendants in their individual capacities. Summary judgment is denied as to the following claims against Defendants in their individual capacities: (1) excessive-force (Count One); (2) due process (Count Three); and (3) conspiracy (Count Four). The stay of this matter is lifted, and the parties are directed to contact Magistrate Judge F. Keith Ball to request a new scheduling order.

**SO ORDERED AND ADJUDGED** this the 7th day of September, 2012.

> s/ *Daniel P. Jordan III*
> UNITED STATES DISTRICT JUDGE